I am sure that the clerk reminded counsel for appellants that you should just remind us as a panel whether you have reserved time for rebuttal and how much time. And with that you may call the first case. Case number 1439.29 United States of America v. Darryl Lee. Oral argument not to receive 15 minutes to decide. Ms. Obermeyer for the appellant. Good morning. May it please the court. I'm Wendy Obermeyer for the Federal Public Defender representing Darryl Lee. And I'd like five minutes for rebuttal. Fine and you may proceed. This suppression appeal is somewhat unique in that the testimony, there is one witness here that is relevant to the issue of suppression. The probation officer. And his testimony is not disputed. This is not a credibility argument on appeal. Taking everything this probation officer said to be true, the record still shows that the officers violated Lee's Fourth Amendment rights by illegally entering and searching his apartment. Because they first failed to obtain a warrant or have reasonable suspicion he was in violation of parole. And second, that they failed to obtain valid consent to enter. I don't understand the second point. I mean, it seems to me undisputed that the girlfriend said, yeah, you can come in. And there wasn't, there's no evidence whatsoever of coercion. They knew each other. They talked on the phone. I'll be home in a few minutes. So, on what grounds do we say there was not valid consent, that her consent to let him in wasn't valid? It's the government's burden to prove consent by a preponderance, and they chose only to present Campana, the probation officer in this case. And there is very little testimony that he actually gave as to what happened when Ms. Harrison, when they called her and had her come to the apartment. It's not clear from his testimony that he asked her for consent. If you read his testimony, and the relevant pages are 240 to 241 and 258 to 259. Those are the only areas where he testifies about this encounter with Jocelyn, Ms. Harrison. And in that, he says, they knocked on the door. No one answered. He called Ms. Harrison. She said, he's there. I'm coming back to the apartment. I'll be there. So, she arrives at the apartment. He escorts her. These are his words. He escorts her from her car with three armed officers, which he had never showed up with before. He'd always just come on his own. He shows up in her car with three armed officers, escorts her to the apartment, and just says, then she let us in. And that's all we know. We don't know that he asked, can you let us in? Or if he just said, okay, you need to let us in now. He just says, she let us in. Are there any cases? I'm sorry, go ahead. Real quick. Was it argued in the district court specifically that her consent was not valid? Yes. Are there any cases that suggest that Ms. Harris would have to use the actual words, you know, I give consent, respond affirmatively to a question from the officer. I do have consent. Do I have consent? Yes. It seems pretty clear she let Campana and the other officers in. She let the officers in the door. That's not disputed. But our contention is that that was just a, she was just complying with their directive to let them in the door. She was, it's an acquiescence to authority. Is there a case that you would cite us to that would be on point that this would, in this sort of circumstance, would not constitute consent? I do. I think there are a number in the brief. Of course, I can't think of one right now. What do you think is maybe the most compelling in your favor, if you have it on the top of your? Well, there can't be a simple, you know, demand to enter. You know, there does have to be, you know, some kind of informed voluntary action taken on the part of. I mean, she didn't have to come back to the apartment when they called her. She could have said, hey, I'm shopping. I'm busy. No, she didn't have to come back to the apartment. The very fact that she did indicates that she was doing it voluntarily. Well, she voluntarily came back to the apartment. Whether or not she voluntarily let them in. She knew that she was coming back to let them in because they were looking for Lee. Presumably. I mean, they could have gotten into the apartment with Lee if they had kept knocking on the door, and then Lee answered, and then she wouldn't have had to let them in. I don't know. But the record here is insufficient to prove informed voluntary consent, and that's the standard. Picking up on Judge Gilman's comment, I mean, we're looking at this, I guess, in the light most favorable to the district court's ruling, right? What's the point of her saying, I'll be home in five minutes? What's the point if she's not going, if she's not willing to let them in? After they've said, we knocked on the door for five minutes and nobody answered. Well, they didn't explain to her on the phone what they wanted in for. I'm not aware of any. Okay, but just before we get off on that, what is, isn't it fair to draw an inference from the comment, I'll be home in five minutes, that she's willing to solve the problem that was described to her, i.e., I knocked on the door for five minutes and nobody answered? She could be. I mean, if a police officer calls anyone and says, I'm at your house, and are you here? I mean, most everybody would come back to talk to see why police officers are there at their home. It doesn't equate that just because you come back to talk to police officers who are waiting outside your door, that you're going to consent or do everything that those police officers are asking of you. You could, you know, she could come home to see, why are you wanting in? Or, what is the purpose for you being here today? We don't know what was said between them.  So we're left with this really scant testimony where he says, we escorted her from her car to the apartment, and she let us in. But, you know, we're not here to decide whether that was right or wrong in the first instance. Isn't this a clearly erroneous standard that we're facing? Did the district court, was it a clear error in deciding that this was consent? I didn't. Have you got enough evidence to show he was clearly in error in this whole ruling? There is. Again, it's the government's burden to show there was clear consent here. And the little testimony that we're left with doesn't meet even the preponderance standard. And so it was clear error. Maybe you ought to concentrate on now the second half. Did your client consent to the search when he says, you know, what did he say, go ahead and take a look? Right. What's wrong with that? That sounds like consent to me. Well, Lee, what we're arguing is that police did not have Harrison's consent to enter into the apartment. I understand that. Their presence was illegal. Because their presence was illegal, any further consent. If we agree with your first instance, right. But let's assume that you don't convince us on your first one. Now go to your second one. Well, this was an unusual circumstance here. Usually when Campana came over to do a home visit, he was alone. They were uneventful. He was not with armed officers. Here it was very different. He was clear his intent was to enter and search, no matter what, that day. Even though he didn't have a warrant. And immediately he came in, he went with an armed officer, got Lee out of bed, cuffed him, frisked him, put him into the living room. And said, is there anything here there shouldn't be? And Lee said, no, go ahead and look. Now, our argument is that Lee being cuffed and frisked and held and in custody in his living room, that that negates his consent. Again, that that's acquiescing to authority in that case. The central argument is that they're there illegally. I guess I ask you again whether there's any case that would support that proposition. I mean, the very fact that a person is handcuffed does not usually vitiate consent that they've given. Are there other indicia of coercion or improper conduct by the officers? Well, the improper conduct is first they're coming to search without any reasonable suspicion here. They shouldn't be coming to search in this instance without a warrant. We're talking about consent right now. And then as to consent, again, it's our position that they were in the apartment illegally. And there is a case, United States v. Chambers, that once police are in the apartment illegally, any consent given after that is invalid. Now, handcuffs, people have been in handcuffs and given consent. And this court has said that would be valid. And I think it was Perry. Yes, United States v. Perry, which was just two years ago, not 2013. And again, the police were there legally. They had received a call of shots fired. They were let into this. It was a boarding house. They were let into the boarding house by people who had called the police. They said, there's the person that was shooting. They go up. They cuff her. And then they asked to. But we're trying to disaggregate the two issues in the case so you understand what we're driving at here. So, I mean, what circumstances relative to Lee's consent do you think vitiated? It's just merely the fact that he was taken into custody and immediately. Do you have any case authority that supports your view on that? There is very limited case authority on that. On Lee's, if the police are there legally, if Lee's consent is valid, there's very little. So limited it doesn't exist is what you're telling me. Very little. But as to, I see my time's almost up. The first question, even if you don't have consent, if they had reasonable suspicion to be in there, that would be permissible. But they did not have reasonable suspicion in this case because they had undocumented hearsay of this unreliable tip that he received and made no efforts to corroborate this tip or contact the tipsters. Four layers. Two days, just two days before he got this tip, he had been at Lee's house and spoken with him and had no reason to believe he was in violation of parole then. So the tip is not enough. So we believe whether you start with consent or reasonable suspicion that the Fourth Amendment was violated here in this case. Okay. Thank you, Ms. Overmyer. You'll have your five minutes of rebuttal. Good morning, Your Honors. My name is Carmen Brown. I'm an Assistant United States Attorney in the Northern District of Ohio, Eastern Division. I'm here on behalf of the United States of America today, the appellee. Your Honors, this Court should affirm the District Court's decision because Lee's Fourth Amendment rights were not violated, where there was one, consent by him to search his apartment, and two, reasonable suspicion that he was engaged in criminal activity. First, starting with consent. Consent, as we know, is one of the exceptions to the warrantless search prohibition. And here, we have two issues of consent. First, there was consent by Lee's live-in girlfriend, Harrison, to enter the apartment. And second, there was consent by Lee to search the apartment. Starting with that first instance of consent, in the testimony at the suppression hearing, it's very clear that the parole officer said that he went to the apartment, he knocked for about five minutes, no one answered. He called Lee, didn't get an answer, so he called Harrison, Lee's girlfriend. When he called her, she said Lee was asleep in the apartment and that she would be right back. Inherently, Your Honors, when she said she would be right back, she was obviously telling him that she would be back and she would let them in, which is exactly what she did. They waited for her. When she got there, she voluntarily let them into the apartment. I mean, it is a little thin on the evidentiary basis for concluding that she consented. Very inferential, I guess, right? Unless I'm missing something. It is inferential in the sense that she opened the door, but we do think that that's an inference that can be made. If you look at Carter, in fact, a case that was cited by Lee, it supports the government there. Right there, the government knocked on a door. He said they were housekeeping. However, when the person came to the door, it was clear that they had on police vests. They asked could they enter the apartment. The person opened the door and they walked in. There, the court found that that was consent to enter. Even though the person said absolutely nothing, the fact that they opened the door, knowing who they were, was consent to enter. Here, similarly, the fact that the parole officer had Harrison's phone number, that she knew who he was, shows that she knew he was the parole officer, and therefore she was consenting to letting the parole officer in the house. What was the name of that case with the opening of the door? Carter. It was United States v. Carter. You have an alternative theory that even if Harrison did not give consent, that there was reasonable suspicion for them to enter anyway, right? That is correct, Your Honor. Now, that's pretty weak, isn't it? We do not believe so, no, Your Honor. You've got quadruple hearsay. Well, if you're looking specifically at the tip, which is what Lee would like for us to do, Lee would like for us to assume that the parole officer went into the house based solely on the tip that he received, but that's not the case here. Reasonable suspicion is based on the totality of the circumstances. And here, the parole officer specifically said, during his testimony in the suppression hearing, I went to my unit supervisor and staffed the case with him based on the fact that Lee had been recently arrested in Campbell for the new F-4 and F-5 violations, and because of his history of having already been convicted of prior weapons charges. So here we see that the parole officer relied on three things for his reasonable suspicion. It wasn't just the tip, but he also tells us that he relied on the fact that he had previously been arrested for these felony drugs. Well, all felons have been previously arrested. That's true, but this felon was arrested five weeks prior while on parole for having quantities of drugs. So he had just been arrested five weeks prior. Yeah, but the tip had nothing to do with drugs. The tip was firearms coming in and out of the apartment, right? That's correct, Your Honor. Okay, so how does that five weeks prior about drugs have anything to do to give reasonable suspicion? Well, to have reasonable suspicion, he merely needed reasonable suspicion of any criminal activity or any parole violation. So he didn't specifically need reasonable suspicion that there were drugs in the house or reasonable suspicion that there were firearms. Any criminal violation was fine. So the fact that he had already violated the law five weeks prior and been caught with drugs gave him reasonable suspicion combined with this tip that he might actually have a firearm in the house. Have you got any case that comes close to this to support your view? As far as totality of the circumstances? Yes. And regarding totality of the circumstances and reasonable suspicion, Your Honor, actually if we were to look at I'm sorry. If we were to If we were to look at, I believe it's Knife, is that what it is? I'm sorry. If we were to look at If we were to start by looking at Navaroff, which is the one that has been cited, there they found there was reasonable suspicion solely based on the tip. Most of the cases that are cited here are based solely on the tip and not on any other additional information. But if we look at Wright, in Wright, the court found there that because the parolee had passed violations of substance abuse, failing to submit urine samples, failure to abide the law, they said that that was enough to come in and have reasonable suspicion. Let's say, what if we took the tip out of the equation completely? Because the tip was made by unnamed residents to an unnamed apartment manager who then makes it to an off-duty, I think, Youngstown police cop who then makes it to Officer Campanas. Let's just take the tip out of the equation. Is there enough of a basis to support reasonable suspicion? Yes, Your Honor. If we take the tip out of the equation, just specifically looking at the fact that he was arrested with drugs five weeks prior is enough. The fact that he had been arrested with drugs and that the parole officer was aware of this arrest gave him reasonable suspicion to expect that there might be more drugs in his apartment only five weeks prior. I'll bet you can't cite me a case that directly says that. As far as the drugs specifically, no. But if we were to look at Wright, it does talk about other arrests. And so in there, because this person was violating their parole and because they had other arrests, they said there was reasonable suspicion. Well, he failed to submit urine samples. He failed to abide by the law by concurring multiple warrants. He failed to notify his parole officer of encounters with law enforcement. I mean, there's a lot more in Wright than there is here. That's true. There was more in Wright. But here we still have someone who was arrested with felony drugs. And then on top of that, we have a tip. In Wright, there was no tip. So here we're talking about the totality of the circumstances. We're putting the two together. And when you put all of those together, you have reasonable suspicion. And furthermore, even if the court were to find that there wasn't reasonable suspicion, which we do believe there was in this case, if the court were to turn to Sampson v. California, the Supreme Court has found that for parolees, as is the case here, even a suspicionless search is valid. There, the court looked at the California statute, which basically provided that simply being on parole alone, your status as a parolee, was enough for the parole officer to search the house. And the Supreme Court found in that case that it was valid because they said a parolee, as opposed to a probationer, has even less rights because they're more akin to someone who is on parole. Wait, there still has to be reasonable suspicion, doesn't there? You can't just barge into a parolee's house at any time you want, can you? No, Your Honors. The court found in that case that you absolutely could, that they said that by signing that letter, they were signing up for suspicionless searches and that it was okay because they were on parole. So the court found that that statute, which provided that no reasonable suspicion was required, was valid. Is there a similar statute in our case? There is not a similar statute in Ohio. Ohio calls for reasonable suspicion. I'm just saying, Your Honors, that if we're looking at whether or not this violated the Fourth Amendment, the Supreme Court has already decided that it did not. Even if we were to find there was no reasonable suspicion and there was no consent, the Supreme Court has already stated that this does not violate the Fourth Amendment. And if we were to turn specifically to consent, Your Honors, we really don't even need to reach the whole argument of reasonable suspicion because it's clear that there was consent here, one by the girlfriend to let them in the apartment, and once she let them in the apartment, there was also consent by Lee. We see from Lee, while Lee argues now that he didn't acquiesce, in the briefs, Lee did not dispute that his consent was voluntarily given. There was no dispute that his consent was voluntarily given, and that's what we can see. The parole officer comes to him and says, Is there anything in this apartment that you should not have? And he says, No, go ahead and look. This is very similar to a case cited by Lee of Knype where the officers initiate a traffic stop and they ask the defendant, Is there anything in this vehicle that's unlawful? He says, No, he didn't think so. They ask him, Can we look? He says, That wouldn't be a problem. They then proceed to look, and the court found that that was valid consent to search the vehicle. Right, of course, Knype wasn't handcuffed or frisked before he was asked, was he? He was not handcuffed or frisked, but as this court has just stated and as this court has stated before in Perry, the use of handcuffs alone does not invalidate consent. Here he was handcuffed for officer safety. He had received a tip to firearms. They also knew that he had been arrested for drugs. So, yes, the parole officer for safety concerns did go ahead and handcuff him, but that does not change consent. And what the court further said in Knype is that it was consent because based on his history with the criminal justice system, it defied common sense that he just acquiesced because he was intimidated by the officers. And the same would be true here. As we know, Lee had an extensive history with the criminal justice system, and so it would equally defy common sense that he simply acquiesced. It also defies common sense that he would say, go ahead and look if he knew he had a gun in the apartment, and it's not that huge an apartment, I assume. More likely they're going to find it if they look. It does, Your Honor, but it also defies common sense that being on parole that he would have a gun. So I guess we can't say that he was operating fully in common sense, but he did have it there. Perhaps he thought the officers wouldn't find it. I don't know why. They didn't find it at first, right? Right. That's correct. That's correct. So apparently he had it hidden pretty well to where it took them a while to find it, and maybe that's what he was betting on. But it does show here on the facts that there was consent to enter, there was consent to search, and therefore his Fourth Amendment rights were not violated. The record also demonstrates that there was reasonable suspicion. And with that, Your Honor, I just have nothing further. Thank you. Okay. Thank you, Ms. Brown. Thank you. I'll start with first talking about the Wright case as to whether an arrest alone can provide reasonable suspicion. And in Wright, there's a considerable number of differences between the arrest in Wright and the previous arrest in Lee's case. In Wright, the defendant had failed to complete counseling and failed to disclose several outstanding warrants. He failed to submit to a urine test after this arrest, and then the probation officer there obtained an arrest warrant and searched the house when they arrested the defendant. Here, the probation officer himself testified that he knew about this arrest. Lee reported the arrest five weeks before. Lee had complied with all of his sanctions. He had attended counseling. He'd given drug screens, which were all negative. And he had visited just two days before, and he said, on that visit two days before, I had no reason to believe that he was in violation of parole. So with the prior arrests and Lee's criminal history, that is not enough. That was not enough, in Campana's own words, to provide reasonable suspicion. The only thing that changed was the unreliable tip. What do you say to Ms. Brown's point that we don't even need reasonable suspicion as far as the Fourth Amendment is concerned in going into a parolee's residence whenever? Well, this court is clear, the Supreme Court is also very clear, that parolees do have Fourth Amendment protection. It is somewhat less than the general citizen. But the Fourth Amendment does apply to parolees. A warrant should be obtained. If there isn't a warrant, there has to be reasonable grounds that the parolee is in violation of a condition of parole, and that's the standard, a reasonable suspicion standard. And here the probation officer himself said that he did not have reasonable suspicion. Lee was in violation just two days prior when he visited Lee at his apartment. The only thing that changed was this unreliable, undocumented tip, where we don't know who exactly gave it. If they were eyewitnesses, we don't know the content. There was no documentation of it. There was no effort made to corroborate it, either through contacting whoever gave it or by surveilling Lee's apartment, which in the majority of cases there's some type of surveillance or corroboration of some sort of a tip to make it reliable. And that is what Navarette specifically talked to in 2014, what makes an anonymous tip reliable. And none of those factors are met in this case. And moving to consent, this Court's corrected that the record is very thin, and the government is making inferences from silence, from questions that they didn't ask Campana, that they didn't bring out this evidence, as was their burden to prove informed voluntary consent. And all we have is that Ms. Harrison came back to her apartment, and then she was met by Campana, who she knew Campana, but she didn't know these three unarmed officers or, I'm sorry, armed officers, these three unknown armed officers that escorted her. And, again, that's Campana's word. We escorted her with these armed officers to her door, and she let us in. He didn't say then we talked to her, then we asked her to let us in, then we explained why we were there, just that we escorted her to the apartment and she let us in. And it is Lee's position that that is not enough to establish informed voluntary consent in this case, and that is a violation of Lee's Fourth Amendment rights. Okay, anything further? No. Okay, well, we thank you for your argument, yours as well, Ms. Brown, today. The case will be submitted. Thank you.